305 So.2d 65 (1974)
WANDA MARINE CORPORATION, a Delaware Corporation, Appellant,
v.
STATE of Florida, DEPARTMENT OF REVENUE, Appellee.
No. V-13.
District Court of Appeal of Florida, First District.
November 21, 1974.
Rehearing Denied January 15, 1975.
*66 Allan L. Hoffman, West Palm Beach, for appellant.
Robert L. Shevin, Atty. Gen., and J. Kendrick Tucker, Asst. Atty. Gen., for appellee.
MASON, Associate Judge.
This is an appeal from a final judgment of the Circuit Court of Leon County upholding the decision of the Department of Revenue of the State of Florida which held that a certain yacht owned by the appellant corporation and which had been imported into Florida from Holland was subject to the use tax imposed by the Department of Revenue under the provisions of Chapter 212, F.S. The facts essential for the resolution of the issues before this *67 Court, viz: whether the yacht in question was subject to the tax imposed and, if so, whether the notice of the tax assessment was sufficient, are as follows:
The yacht is the only asset owned by appellant corporation. The corporation is a Delaware Corporation incorporated in February, 1970. It is a closed corporation controlled completely by one John Leopold, a resident of Florida, its president, with its business office in Wilmington, Delaware. The boat was purchased, as evidenced by a bill of sale to the corporation, on November 10, 1970, Leopold claimed that it was purchased in Amsterdam, The Netherlands, as an investment for potential capital gains. He testified that the purchase price was paid and the boat physically delivered on August 1, 1970, for testing and trials, and that it was insured by appellant at that time for the amount of the purchase price of $320,000. But he also testified at the final hearing before the trial court that between the date of delivery of the boat to the corporation and the delivery of the bill of sale the corporation was testing it out and "using it for pleasure and satisfaction until we would accept it." He also testified that there was no written contract to sell and buy between the seller and the corporation prior to delivery of the bill of sale, that "we didn't have to accept the boat if it had some flaws in it", and that had the boat sunk or been destroyed before delivery of bill of sale the insurance company which had insured the boat at the cost of appellant corporation would have reimbursed the corporation for the $320,000 purchase price. The seller was also a co-insured under the policy. The boat was used by appellant in European waters prior to and after delivery of bill of sale, from about August 1, 1970, until it was shipped by freighter to Miami, Florida, arriving there on February 28, 1971  a period of more than seven months.
The boat was docked at Leopold's home, after arriving in the State of Florida, until the end of May, 1971, at which latter time it left the State for an extended cruise. It returned to Florida in November, 1971, and remained in the State off and on during the winter season until the end of April, 1972. During the time the boat was in Florida, upon occasions it was taken to the Bahamas for short cruises. The Department of Revenue assessed the tax in question upon the yacht on April 20, 1972.
On at least one occasion Leopold loaned the boat to others for the use of which he was paid $500. He allowed his friends to use it at other times without payment of fees. He also used it himself on occasions for pleasure. He testified that at no time was the boat rented or leased for profit, nor was it purchased specifically for use in the State of Florida.
Based upon these facts the trial court held that the boat was properly assessed a use tax, that it was not exempt from such tax and that proper notice of the assessment had been given the appellant. Appellant contends that the boat was exempt from the use tax assessment under the specific provision of Section 212.06(8), F.S., and that the Department of Revenue's assessment was invalid for that reason. It, therefore, argues that the trial court's conclusion that the boat was not exempt from the tax assessment was erroneous. It also contends that the notice of assessment of the tax was invalid, and that for such additional reason the trial court should be reversed.
The correct resolution of the two issues before us require our construction and interpretation of several sections and subsections of Chapter 212, F.S. This chapter is commonly known as the "Florida Revenue Act of 1949," and is by nature a transaction tax statute. Generally speaking, it places a four per cent tax measured by the value of the property involved upon all transactions in which tangible personal property is the subject, upon admissions to certain classes of entertainment, upon the rentals of certain classes of rental property and upon certain services rendered.
*68 Section 212.05 which makes provision for the imposition of the tax in question is as follows:
"212.05. Sales, storage, use tax.  It is hereby declared to be the legislative intent that every person is exercising a taxable privilege who engages in the business of selling tangible personal property at retail in this state, or who rents or furnishes any of the things or services taxable under this chapter, or who stores for use or consumption in this state any item or article of tangible personal property as defined herein and who leases or rents such property within the state. For the exercise of said privilege a tax is levied on each taxable transaction or incident and shall be due and payable, according to the brackets set forth in 212.12(10), as follows: ... .
(2) At the rate of four per cent of the cost price of each item or article of tangible personal property when the same is not sold but is used, consumed, distributed or stored for use or consumption in this state. (Underscoring ours)
The boat was not sold at retail within the State of Florida and, therefore, was not subject to the retail sales tax imposed by statute. The question then is, was it stored or used within the State under such conditions as to make it subject to the use tax imposed by subsection (2) of Section 212.05, supra. Under Section 212.02, Definitions, the term "storage" is defined as "any keeping or retention in this state of tangible personal property for use or consumption in this state, or for any purpose other than sale at retail in the regular course of business." (Section 212.02(7)). In subsection 212.02(8) the term "use" is declared to mean and to include "the exercise of any right or power over tangible personal property incident to the ownership thereof, or interest therein, except that it shall not include the sale at retail of that property in the regular course of business."
Our Supreme Court in United States Gypsum Company v. Green, 110 So.2d 409, decided in 1959, stated that the primary function of the use tax imposed by this statute is to complement the sales tax so imposed so as to make uniform the taxation of property subject to the tax, whether produced, purchased and used in this State or produced and purchased in another state or country, but used in this state. And in Green v. Pederson, Fla., 99 So.2d 292, decided in 1957, that Court held that the use tax imposed by this statute is to be levied upon the use of out-of-state purchases in the same manner and upon the same tangible personal property as is the sales tax on intrastate purchases.
Furthermore, although the statute expressly exempts from the payment of the use tax tangible personal property upon which a like tax equal to or greater than the amount imposed by the statute has been imposed and paid in another state, (Section 212.06(7)), there is no evidence that such a like tax was ever imposed or paid upon this boat in any other state. That being true, there then becomes operative as to this particular property the express provision of Section 212.06(6), wherein it is declared that it is the intention of the statute "to levy a tax on the sale at retail, the use, the consumption, the distribution, and the storage to be used or consumed in this state of tangible personal property after it has come to rest in this state and has become a part of the mass property of this state." In construing the use tax imposed by the statute upon tangible personal property manufactured outside of Florida, but shipped into the state for use herein we held in Whitehead & Kales Company v. Green, 113 So.2d 732, decided in 1959, that
"[t]he theory supporting the use tax is that it is an impost on the privilege of using personal property which has been shipped into the state and come to rest in the taxing forum and has become a part of the property within the taxing situs. The levy is actually imposed upon *69 and collected from the ultimate consumer who as a Florida resident enjoys the use of the property after it has come to rest."
It is clear from the facts in this case that the boat in question, although mobile, came to rest in Florida when it was docked for a period of time at the dock of the president of the appellant corporation at his residence in Miami, that it was used by appellant for business and pleasure purposes in Florida waters, that it operated from such dock as its situs in Florida, and that it thereby became a part of the mass property of this State within the intent of the express provision of subsection(6) of Section 212.06, F.S. It is, therefore, subject to the use tax imposed by the statute unless expressly exempt therefrom by some other provision of the statute.
Appellant relies upon the provisions of subsection(8) of Section 212.06 to exempt the boat in question from the use tax. This subsection is as follows:
"(8) Use tax will apply and be due on tangible personal property imported or caused to be imported into this state for use, consumption, distribution or storage to be used or consumed in this state; provided, however, that it shall be presumed that tangible personal property used in another state for six months or longer before being imported into this state was not purchased for use in this state... ."
The trial court held that under the facts of this case the boat was imported into Florida for use in this State, and that the use of the boat in European waters prior to its arrival in Florida did not support a presumption that the boat was not purchased for use in Florida. We agree with the trial court. Appellant contends that the boat was used in another state, viz: in European waters, for more than six months prior to its arrival in Florida, thereby supporting the presumption that it was not purchased for use in Florida. In considering this contention, it must be kept in mind that tax exemptions must be strictly construed against the claimant. This principle was forcibly brought to the attention of the writer of this opinion in Straughn v. Camp et al., Fla., 293 So.2d 689. And in United States Gypsum Company v. Green, supra, the Court stated that while doubtful language in taxing statutes should be resolved in favor of the taxpayer, the reverse is applicable in the construction of exceptions and exemptions from taxation. It is our view that the word "state" as used in the exemption proviso of Section 212.06(8), means one of the states of the United States and not a foreign entity. This construction is in keeping with the common usage of the word "state". The absence of a different connotation expressed or implied in the statute causes us to reach this conclusion and to hold that the appellant's use of the boat in foreign waters, for whatever period of time prior to bringing it into Florida, did not bring it within the ambit of the exemption provision relied upon by appellant. Had the legislature intended for the term "state" to include foreign countries it could have done so by adding the phrase "or foreign country" after the word "state" in the exemption proviso, as it did do in Section 212.06(2)(b) in defining the term "dealer". This construction of the term "state" is also supported by the language contained in Subsection (4) of Section 212.06, where the legislature specifically included the term "foreign country" when it imposed the duty upon the dealer of tangible personal property to pay the tax imposed by the statute "[o]n all tangible personal property imported or caused to be imported from other states, territories, the District of Columbia, or any foreign country." (Italics ours). These expressions of the legislature which impose the use tax on property imported from other states of the Union, territories, the District of Columbia or any foreign country, but which creates a presumption of exemption for property used "in another state" only, clearly show an intent not to create the presumption from use in a foreign country. *70 The maxim of "expressio unius est exclusio alterius" is particularly applicable in construing the term "state" as used in the exemption proviso as against the use of the term in conjunction with other political entities in other provisions of the same statute.
Even though it be conceded that the use of the yacht in foreign waters for the prescribed period of six months was by the appellant as incident to its ownership thereof within the meaning of the term "use" as set forth in Subsection(8) of Section 212.02 (upon which question the evidence before the trial Court was conflicting), such use raises only a rebuttable presumption that the property was not purchased for use in this State. We are of the opinion, as undoubtedly was the trial judge, that such presumption was overcome by the weight of the evidence. The sum of such evidence as related above in the recitation of the facts of this case is preponderately to the effect that after the boat was docked at Leopold's residence following its delivery to him in Florida it was used, both for pleasure and on loan or rental to others in this State. Thus, appellant enjoyed all the privileges and benefits of ownership in the State of Florida. Such use belies the statement of Leopold that the boat was purchased only for capital gain or investment purpose. No sales or use tax having been paid by the appellant on the purchase of the boat in any other state the trial court was correct in rejecting appellant's claim for exemption.
The second point pressed by appellant for reversal of the judgment below is that the trial court erred in holding that the notice of assessment was valid even though it be found that the boat was subject to the tax. The basis of this contention is appellant's assertion that the notice of assessment attempts to impose a sales tax liability on appellant when, if any tax is due, it is a use tax. It also contends that nowhere in the notice is it stated that the tax liability is created by Chapter 212, F.S., nor the official name of the statute stated under which the assessment is made. Finally, appellant in support of its claim for reversal on this point, asserts that the assessment was invalid because it appears to impose a tax upon the purchase of the boat in Holland, making no reference to tax liability for the importation for its use in Florida. We find no merit in these contentions.
The assessment notice states that it is for "Sales and Use Tax." It is clear from a reading of the entire notice that the assessment was not made upon a sale of the property because the assessment was listed in Schedule "B" dealing with purchases and not under Schedule "A" dealing with sales. The notice states specifically that the assessment was made under Chapter 212, Florida Statutes, which, of course, gave notice that the assessment was made under the Florida Revenue Act of 1949, which act imposes taxes upon sales, use and other transactions. Nowhere in the statute is a tax specifically placed upon a purchase of property, but a use tax is imposed upon tangible personal property used in the State of Florida measured by the "cost price of each item or article of tangible personal property when the same is not sold in Florida, but is used therein. (Section 212.05(2) and Section 2.2.06(1)(a)). The Supreme Court in Gypsum, supra, stated that the use tax, under the statute, was computed on the basis of the transaction between the vendor and vendee at the time of the consummation of the transaction and that "cost price" and "purchase price" are synonymous. The use of the word "purchases" in Schedule "B" of the assessment was sufficient notice that the assessment was for a use tax when read in conjunction with (1) the statement in the notice that the assessment was for delinquent "Sales and Use Tax" and (2) the absence of any dollar figure under Schedule "A" of the notice coupled with the dollar figure of assessment under Schedule "B" of the notice. Furthermore, a hearing was accorded appellant following receipt by it of the notice of assessment at which time it was evident that appellant was apprised *71 of the nature of the assessment against it and was given the opportunity to state its reasons for not being, in its opinion, liable for the tax. Due process was thus accorded the appellant.
Finding no error in the judgment of the trial court, we conclude that the judgment should be, and it is,
Affirmed.
RAWLS, C.J., and JOHNSON, J., concur.